**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LINDA GIESEKE, et al., individually and on behalf of other similarly situated persons,**  )<br>)<br>)<br>**Plaintiffs,**  )<br>)<br>**v.**  )<br>)<br>)<br>**FIRST HORIZON HOME LOAN CORPORATION, et al.,**  )<br>)<br>)<br>**Defendants.**  )<br>) | **CIVIL ACTION**<br><br>**No. 04-2511-CM** |

**MEMORANDUM AND ORDER**

Plaintiffs, loan originators for defendant First Horizon Home Loan Corporation ("First Horizon"), bring this lawsuit on behalf of themselves and other similarly situated employees and former employees under section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to recover unpaid overtime compensation. Plaintiffs also assert state law claims for quantum meruit and violation of the Kansas Wage Payment Act. This matter is before the court on Plaintiffs' Motion for Conditional Collective Action Certification Pursuant to 29 U.S.C. § 216(b) (Doc. 62). Although plaintiffs have also filed a motion to certify a class action regarding their state law claims, this motion only concerns their FLSA claims. For the following reasons, the court conditionally certifies the class.

**I.      Legal Standards**

The threshold issue before the court is which standard for certification applies at this time. Plaintiffs claim that the lenient "notice stage" standard applies, and defendants maintain that because the parties have engaged in extensive discovery, the more rigorous "second stage" standard applies. The court concludes that the notice stage standard applies.

Conditional certification of a class under the FLSA requires compliance with the FLSA class action mechanism, which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Whether an employee may maintain a § 216(b) class action, then, depends on whether he or she is "similarly situated" to other members of the putative class. Although § 216(b) does not define the term "similarly situated," the Tenth Circuit has endorsed the *ad hoc* method of determination. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (stating that although "there is little difference in the various approaches," "the *ad hoc* approach is the best of the three approaches outlined because it is not tied to the Rule 23 standards").

Under the *ad hoc* method, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). This initial determination "'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Vaszlavik*, 175 F.R.D. at 678 (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1066 (D. Colo. 1996))). This standard is a lenient one, *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 485 (D. Kan. 2004), but some courts have found that a plaintiff must factually

support his allegations, *see, e.g., Mueller v. CBS, Inc.*, 201 F.R.D. 425, 429 (W.D. Pa. 2001) (requiring the plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that putative class members are similarly situated (citation omitted)); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996). Others have held that nothing more than substantial allegations is necessary. *See, e.g., Felix de Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001). While the Tenth Circuit's language in *Thiessen* seems to indicate that only substantial allegations are required, the court need not resolve the issue because plaintiffs have assumed that some presentation of evidence is appropriate here, and they have presented limited evidence in support of their claims.

"Because the court has minimal evidence, [the notice stage] determination . . . typically results in 'conditional certification' of a representative class." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). The "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards. *Grayson v. K-Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996). The court typically makes the determination fairly early in the litigation, before the parties complete discovery. *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004). And in making the determination, the court does not reach the merits of the plaintiff's claims. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citation omitted).

After the parties have completed discovery, the court then makes a second determination, applying a stricter "similarly situated" standard. *Thiessen*, 267 F.3d at 1102-03 (citation omitted). A motion to decertify often prompts this second determination. *Id.* The court reviews several factors during this "second stage" analysis, including the following: "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each

-3-

plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the [FLSA] before instituting suit.'" *Id.* at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678).

Defendant submits that the second stage determination, not the notice stage determination, applies here. Defendant points out that the notice stage analysis is typically applied in the early stages of a case. *See Brown*, 222 F.R.D. at 680 (considering a motion for conditional class certification filed the day after the court's initial scheduling conference). In this case, the parties have engaged in discovery relating to policies and procedures and the duties and responsibilities of plaintiffs who have opted into this case. Plaintiffs have taken the depositions of Pete Cipolla, President of the National Sales Support ("NSS") Division and Stacey Croschere, NSS Employee Services Representative. Defendants have produced almost 6,000 documents, including personnel files, time sheets, pay records, policies and procedures, job descriptions, organizational charts, compensation plans, memos reflecting disciplinary and management functions assumed by team leads, e-mails and memos related to plaintiffs' compensation and exempt/non-exempt classification, and computer log-in and log-out records. Additionally, defendants have taken the depositions of two of the opt-in plaintiffs, John Andrew Bierwirth and Marcella Eaton.

Other courts have adopted defendant's proposed approach where the parties have engaged in significant discovery. *See, e.g., Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (applying stricter standard where over one hundred plaintiffs had opted in, and discovery was complete); *see also Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (stating that where parties presented extensive evidence to the court, a careful consideration of the evidence was warranted); *Ray v. Motel 6 Operating, Ltd. P'ship*, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (declining to apply notice stage standard because the facts before the court were extensive and

discovery was unnecessary); *cf. Williams*, 222 F.R.D. at 485 (applying notice stage analysis because "the parties have not engaged in discovery on those issues pertinent to the 'second stage' analysis").

The court finds that use of the second stage analysis is inappropriate in this case. As plaintiffs point out, the parties have engaged in discovery, but it has been limited. The evidence before the court is not extensive, and the court cannot conclude that the evidence is representative of what plaintiffs would present given further discovery. Moreover, the Report of Parties' Planning Meeting and Scheduling Order both contemplate that the case will proceed pursuant to the two-step approach. *See Brown*, 222 F.R.D. at 680 (noting that the scheduling order contemplated that the two-step process would be used, and for that and other reasons, utilized the "notice stage" standard). Finally, as one court has noted, "beginning with tier one of the analysis is the most equitable means of proceeding. . . . [S]hould the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit. . . . The potential prejudice to plaintiffs of bypassing tier one thus is significant." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468 (N.D. Ca. 2004); *see also Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (rejecting request to skip notice stage inquiry because discovery was ongoing and because scheduling order "characterizes the pending motion as a motion for *conditional* class certification") (emphasis in original); *Vaszlavik*, 175 F.R.D. at 678 (rejecting request to skip notice stage inquiry "because discovery is not complete and significant economies can still be achieved by collective discovery and trial preparation"). For these reasons, the court will apply the notice stage standards.

## II.     Discussion

The issue next before the court is whether plaintiffs have met their light burden of showing that members of the putative class are similarly situated. A plaintiff can demonstrate that she and putative class

members are similarly situated by showing that they were subject to a common policy. *Brown*, 222 F.R.D. at 679; *Hoffmann*, 982 F. Supp. at 261 ("[C]ourts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."). Plaintiffs ask the court to conditionally certify a class of loan originators, including loan originators in both the NSS and Retail Divisions. Loan originators in the NSS Division place home loans with consumers after being provided the names of loan applicants and contacting them from their central office location. Retail Division loan originators sell loan products to customers by contacting them at their places of business. Plaintiffs allege that all loan originators in the NSS Division have the same job duties, and all loan originators in the Retail Division have the same job duties. Mr. Cipolla testified in his deposition that the job duties in each division, while not identical, are "similar in nature." According to plaintiffs, loan originators in both divisions worked overtime in excess of forty hours per week, and, as a uniform policy, were not paid for this overtime because they were misclassified as non-exempt employees. Plaintiffs also allege that all loan originators are subject to the same centralized management system responsible for determining FLSA issues.

Defendants point out differences in plaintiffs' job duties, places of employment, compensation plans, and experience levels. At this stage of the litigation, defendants' arguments do not persuade the court that conditional certification is unwarranted. The court has allegations and evidence before it that plaintiffs' job duties are similar. That is all that is required in the notice stage. *See Leuthold*, 224 F.R.D. at 465 (conditionally certifying class despite different job duties and terms of employment); *Donohue v. Francis Servs.*, 2004 WL 1161366, at *2-3 (E.D. La. May 24, 2004) (conditionally certifying collective action and rejecting "defendants' argument that such a class is problematic because it includes individuals from various

positions, locations, etc."); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 94-96 (S.D.N.Y. 2003) (authorizing notice to the plaintiff, a meat cutter, and other employees within different divisions of a grocery store, such as dairy, frozen foods and bakery, who performed factually similar tasks to the plaintiff). Moreover, defendants' argument about differing compensation plans goes to damages. Individual differences in damages are not to be considered when ruling on conditional certification and "will not defeat [conditional] class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit." *Brown*, 222 F.R.D. at 682; *see also Reab*, 214 F.R.D. at 628 (same).

Many of defendants' arguments focus on the merits of plaintiffs' claims. But "[c]onditional certification of a collective action and the issuance of a notice do not require this Court to adjudicate the merits . . . ." *McQuay v. Am. Int'l Group, Inc.,* 2002 WL 31475212, at *1 (E.D. Ark. 2002); *see also Vaszlavik*, 175 F.R.D. at 680 ("[W]hether plaintiffs can meet their burden in the liability phase . . . is irrelevant to the question of § 216(b) certification"). And it is only during the second stage analysis that a court reviews "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit." *Brown,* 222 F.R.D. at 679. Any manageability issues will be addressed at that time. *See, e.g., Thiebes v. Wal-Mart Stores, Inc.*, 2002 WL 479840, at *1 (D. Or. Jan. 9, 2002) (bifurcating trial and determining first whether Wal-Mart had a pattern or practice of not paying overtime); *Gjurovich*, 282 F. Supp. 2d at 96 n.1 (noting that if discovery revealed that the meat cutter was not similarly situated with other employees within different sections of the grocery store, the court may "divide the class into subgroups, if appropriate."); *see also Vaszlavik*, 175 F.R.D. at 681 ("if plaintiffs prevail in the liability

phase, I will revisit whether the class should be decertified for the remedial phase or whether appropriate subclasses can be crafted.").

The court concludes that the above-cited evidence is sufficient to conditionally certify a class. The court notes that several other courts have found that conditional certification of loan originators as a class is appropriate. *See, e.g., Geer v. Challenge Fin. Investors Corp.*, 2005 WL 2648054, at *2-*5 (D. Kan. Oct. 17, 2005); *Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161, at *1-*2 (N.D. Tex. May 21, 2002); *Casas v. Conseco Fin. Inc.*, No. 00-1512, at 7-8 (D. Minn. Dec. 4, 2000). In the event that discovery reveals that this is not a proper case for collective action, defendants may move to decertify the class at the close of discovery.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Conditional Collective Action Certification Pursuant to 29 U.S.C. § 216(b) (Doc. 62) is granted. Defendants are ordered to provide plaintiffs with the names and current or last known addresses and telephone numbers for all current and former loan originators who have worked for First Horizon at any time since October 14, 2001, within fourteen (14) days of the date of this Memorandum and Order. The parties should submit a proposed notice to the court for approval within thirty (30) days.

Dated this 10th day of January 2006, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**